**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KWAME MOORE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-4323** |
| | : | |
| **MICHAEL ZAKEN, THE DISTRICT** | : | |
| **ATTORNEY OF THE COUNTY OF** | : | |
| **PHILADELPHIA, THE ATTORNEY** | : | |
| **GENERAL OF THE STATE OF** | : | |
| **PENNSYLVANIA** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                           **December 13, 2023**

A man repeatedly shoots and kills a person knocking at his front door almost ten years ago. The Commonwealth charges the shooter with murder. A jury finds the Commonwealth adduced evidence beyond a reasonable doubt of the shooter's guilt for first-degree murder. The state trial judge details the legal and fact basis for the jury's judgment for appellate review. The convicted shooter appeals with no success. He then moves for post-conviction relief with no success. He now moves for habeas relief challenging the weight of the evidence and his counsel's effectiveness.

Judge Lloret studied the extensive record and issued over thirty pages of findings recommending we deny habeas relief. The convicted shooter objects to Judge Lloret's findings. We studied the entire record and applied a de novo review to the objected findings. We agree with Judge Lloret in all respects. We deny habeas relief. We find no basis for an evidentiary hearing or for a certificate of appealability.

### I.   Facts adduced from trial.

Devon Johnson drove his friends Ryan Brown, Larry Smith, and Quaron Highsmith to the 3800 block of Reno Street in Philadelphia, a known drug area, to buy drugs on the night of

December 22, 2013. Mr. Smith gave Mr. Brown a gun and told him to knock on the front door of a house in exchange for Mr. Smith purchasing Mr. Brown drugs. Mr. Brown left the car and knocked on the door of 3817 Reno Street.[1]

Mr. Highsmith, sitting in the passenger seat of the car, heard Kwame Moore open the front door and yell at Mr. Brown demanding to know why Mr. Brown knocked on the door.[2]

Mr. Smith also saw Mr. Moore yell at Mr. Brown.[3] Mr. Smith could not hear what the two were saying.[4] So, Mr. Smith got out the car to say something to Mr. Moore.[5] Mr. Smith then saw Mr. Moore open the screen door and shoot Mr. Brown from the door several times.[6] Messrs. Smith and Highsmith fled in opposite directions after the shooting.[7]

Devon Johnson heard the gunshots and saw Mr. Brown spin and fall off the porch of the house.[8] Mr. Johnson also saw Mr. Moore come out from the doorway firing his gun.[9] Mr. Johnson got out of his car, shot at Mr. Moore, and then fled in the same direction as Mr. Highsmith.[10] Messrs. Smith, Highsmith, and Johnson later returned to the scene to check on Mr. Brown.[11] Police soon arrived and saw Messrs. Johnson, Smith, and Highsmith standing next to Mr. Johnson's car yelling for help.[12] Police officers found Mr. Brown bleeding on the ground, put him in a squad car, and drove him to the Hospital of the University of Pennsylvania where he died.[13]

Mr. Brown sustained five gunshots.[14] Two bullets struck Mr. Brown in the back of his right shoulder, with one bullet hitting his right lung, aorta, and heart.[15] Another bullet entered the front of his right thigh and exited the back of his leg, striking the femoral artery.[16] Two bullets struck Mr. Brown's knees.[17] The Philadelphia County deputy medical examiner testified to the cause of Mr. Brown's death as homicide caused by multiple gunshot wounds.[18]

Police found a 9mm handgun by Mr. Brown's body.[19] Police also found seven fired cartridge casings on the property; three found inside the house, three found on the porch, and one

found at the bottom of the front steps of the house.[20] Police Officer Kelly Walker of the Firearms Identification Unit testified the same firearm fired all seven cartridge casings but not the firearm found by Mr. Brown's body.[21]

Philadelphia police detectives interviewed Mr. Smith who identified Mr. Moore as the shooter.[22] Mr. Smith told detectives he knew Mr. Moore for approximately five years.[23]

Detectives interviewed Mr. Highsmith who told them he saw muzzle flashes and a man's arm holding a gun shoot at Mr. Brown.[24] In a second statement ten months later, Mr. Highsmith identified Mr. Moore from a photograph and wrote "shoot Ryan" on top of the photograph.[25]

Philadelphia police arrested Mr. Moore in March 2015.[26] The Commonwealth charged Mr. Moore with murder and other offenses in the shooting death of Mr. Brown.

The Commonwealth appointed attorney Joseph Schultz to represent Mr. Moore at trial. Attorney Schultz raised justifiable self-defense at trial.[27] Trial began March 1, 2016. Police officers, medical and firearms experts, and Messrs. Smith, Highsmith, and Johnson all testified for the Commonwealth.[28] Mr. Highsmith and Mr. Johnson identified Mr. Moore as the shooter at trial.[29] Detective Laura Hammond testified at trial she searched for Mr. Moore in police databases.[30] Mr. Moore's counsel objected to Detective Hammond's testimony at trial.[31] The jury found Mr. Moore guilty of first–degree murder. The Honorable Barbara A. McDermott sentenced Mr. Moore to the mandatory sentence of life imprisonment without parole on March 4, 2016.

### Mr. Moore's direct appeal from his sentence.

Mr. Moore timely appealed his sentence to the Pennsylvania Superior Court.[32] Mr. Moore, represented by Attorney Stephen O'Hanlon, raised four issues on appeal: (1) his conviction for first–degree murder is against the weight of the evidence and a new trial should be ordered; (2) the evidence is insufficient as a matter of law to convict him of murder in the first degree; (3) the

evidence is insufficient as a matter of law to convict him of murder in the first degree because self–defense had not been disproven beyond a reasonable doubt; and (4) the trial court erred and caused irreparable harm by overruling objections to Detective Hammond's testimony she searched for Mr. Moore in a police database, indicating to the jury he had earlier arrests and/or convictions.[33]

The Pennsylvania Superior Court affirmed the judgment of sentence. The court first addressed Mr. Moore's argument regarding the sufficiency of the evidence to support a first–degree murder conviction and disprove self–defense. Mr. Moore argued the evidence at trial showed: a shouting argument between Mr. Moore and Mr. Brown; Mr. Brown armed himself with a 9mm handgun; police found a bullet mark on the exterior of the house; and police found a 9mm bullet casing inside the house.[34] Mr. Moore argued this evidence is insufficient to prove he possessed the specific intent to kill Mr. Brown required for a first–degree murder conviction and insufficient to ***disprove*** he killed Mr. Brown while acting in self–defense, a burden of the Commonwealth to disprove beyond a reasonable doubt.[35]

With regard to self-defense, the Superior Court noted Mr. Moore's appellate brief contained a "passing remark" he "objectively feared for his life and even if his response was excessive, he is at most guilty of voluntary manslaughter."[36] The Superior Court considered this as a claim of imperfect self-defense but rejected it because Mr. Moore did not raise to the trial court a voluntary manslaughter argument, he did not request a jury charge on voluntary manslaughter, and he did not raise a claim of imperfect self-defense in his Rule 1925(b) statement.[37] The Superior Court concluded Mr. Moore waived the imperfect self–defense on appeal.[38]

The Superior Court addressed Mr. Moore's weight of the evidence argument. The court reviewed the record, the parties' briefs, the applicable law, and Judge McDermott's opinion, and

concluded the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt Mr. Moore acted with specific intent to kill and did not act in self–defense.[39] The court reviewed the record showing three eyewitnesses identified Mr. Moore as the shooter, two of the eyewitnesses testified Mr. Moore came out from the doorway firing his gun without Mr. Brown ever firing, someone fired seven shots at Mr. Brown at close range, and five shots hit Mr. Brown including in vital body parts (lung, aorta, heart, and femoral artery). The evidence did not show Mr. Moore had a reasonable belief of imminent danger of death or serious bodily harm.[40] The Superior Court rejected Mr. Moore's weight of evidence argument, finding the trial court correctly considered the weight of the evidence sufficient to support a guilty verdict and did not abuse its discretion in rejecting Mr. Moore's weight of evidence claim.[41]

The Superior Court  rejected Mr. Moore's argument Judge McDermott  abused her discretion by admitting Detective Hammond's testimony she searched for Mr. Moore's address in police databases leading the jury to infer he had a police record.[42] The court explained references to earlier police contact do not amount to reversible error under Pennsylvania law and only reference expressly or by reasonable implication indicate some involvement in prior criminal activity constitutes to prejudicial error.[43] The Superior Court, affirming the trial court, concluded the Commonwealth referred to a search of "various databases" and did not indicate a law enforcement database and even if the jury inferred Detective Hammond searched a law enforcement database, it could not reasonably conclude Mr. Moore's presence in the database is only as a result of a conviction rather than some other purpose.[44]

The Pennsylvania Superior Court affirmed the judgment of sentence. The Pennsylvania Supreme Court denied Mr. Moore's petition for allowance of appeal.[45]

*Mr. Moore sought post-conviction collateral relief.*

Mr. Moore pro se filed a timely petition for post-conviction relief under Pennsylvania's Post-Conviction Relief Act on August 9, 2018.[46] Mr. Moore raised nine claims of ineffective assistance of trial counsel for failing to: (1) conduct a proper pre-trial investigation; (2) present his requested alibi defense and subpoena alibi witnesses; (3) object to perjured testimony of Commonwealth witnesses Mr. Highsmith and Mr. Johnson; (4) impeach Commonwealth witness Mr. Highsmith based on inconsistent identification testimony; (5) cross-examine Commonwealth witness Mr. Highsmith based on his conflicting testimony; (6) request a jury instruction based on inconsistent identification testimony; (7) request a jury instruction based on perjured testimony; (8) request a jury instruction based on polluted source; and (9) request a jury instruction for conflicting testimony.[47]

The Commonwealth appointed attorney George S. Yacoubian as Post-Conviction Relief Act counsel and, after Attorney Yacoubian's withdrawal, appointed attorney Earl G. Kauffman as Post-Conviction Relief Act counsel for Mr. Moore.[48] Judge McDermott continued the matter until October 25, 2018 to allow Attorney Kauffman to review the record.[49] Attorney Kauffman moved to withdraw and filed a no-merit letter under *Commonwealth v. Finley*.[50] Judge McDermott issued a notice of intent to dismiss his Post-Conviction Relief Act petition as without merit.[51] Mr. Moore did not respond to Judge McDermott's notice of intent to dismiss.  Judge McDermott allowed Post Conviction Relief Act counsel Attorney Kauffman to withdraw and dismissed Mr. Moore's Post Conviction Relief Act petition. Judge McDermott reviewed Mr. Moore's claims and rejected each of them in a November 29, 2018 order and opinion.[52]

Mr. Moore timely appealed the dismissal of his Post-Conviction Relief Act petition to the Pennsylvania Superior Court. The Superior Court considered, and rejected, Mr. Moore's

ineffective assistance of trial counsel claims and affirmed the Post-Conviction Relief Act court

Judge McDermott's  decision in its May 21, 2020, memorandum.[53] Mr. Moore did not petition for

allowance of appeal to the Pennsylvania Supreme Court.

### *Mr. Moore seeks habeas relief.*

Mr. Moore pro se petitioned for habeas relief.[54] He then filed a counseled amended habeas

petition asserting seven grounds for relief:

1. Insufficient evidence as a matter of law to convict Mr. Moore of murder in the first degree;

2. The trial court erroneously overruled an objection to Detective Hammond's testimony she searched for Mr. Moore in police databases thereby informing the jury he had prior arrests and/or convictions;

3. Ineffective assistance of trial counsel for failure to present an alibi defense and to investigate, interview, and call alibi witnesses who would have established Mr. Moore's innocence;

4. Ineffective assistance of trial counsel for failing to properly impeach Commonwealth witness Quaron Highsmith who gave eyewitness testimony with prior inconsistent statements;

5. Ineffective assistance of trial counsel for failing to request a *Kloiber* instruction on Mr. Highsmith's inconsistent and conflicting testimony and who offered false identification testimony;

6. Ineffective assistance of trial counsel for failing to request a cautionary instruction concerning the testimony of Devon Johnson who had expectations of receiving favorable treatment and/or "a deal" in his pending criminal case in exchange for trial testimony; and

7. Ineffective assistance of trial counsel for failing to conduct an independent investigation of the circumstantial evidence and to explore all avenues leading to the unsubstantiated theory of the Commonwealth's case against Mr. Moore.[55]

We referred Mr. Moore's petition to the Honorable Richard A. Lloret for a Report and

Recommendation.[56] Judge Lloret concluded the insufficient evidence claim is without merit

because the record contains sufficient evidence for a first-degree murder conviction and for the

jury to reject a self-defense theory.[57] Judge Lloret also concluded Mr. Moore's voluntary manslaughter argument relating to the self-defense theory is procedurally defaulted.[58] Judge Lloret recommended we deny habeas relief on the first ground.

Judge Lloret concluded the trial court did not err when permitting Detective Hammond to testify she searched Mr. Moore in a police database. Judge Lloret concluded the claim is not a cognizable habeas claim but, even if cognizable, is meritless.[59] Judge Lloret recommended we deny habeas relief on the second ground.

Judge Lloret concluded the remaining five grounds based on ineffective assistance of trial counsel claims lacked merit.[60] Judge Lloret recommended we deny the ineffective assistance of trial counsel claims asserted at grounds three through seven. Judge Lloret issued a detailed Report and Recommendation recommending we deny the habeas petition and decline to issue a certificate of appealability.[61]

### Mr. Moore objected to Judge Lloret's Report and Recommendation.

Mr. Moore, through counsel, objected to Judge Lloret's Report and Recommendation.[62] Mr. Moore withdrew his ineffective assistance claim (sixth habeas ground) based on an alleged failure to request a cautionary instruction concerning the testimony of Devon Johnson who had expectations of receiving favorable treatment and/or "a deal" in his pending criminal case in exchange for trial testimony.[63] Mr. Moore now concedes trial counsel requested such an instruction and Judge McDermott gave the instruction to the jury.[64]

## II. Analysis

We review de novo the portions of Judge Lloret's Report and Recommendation to which Mr. Moore objects and we "may accept, reject, or modify, in whole or in part, the findings or recommendations made" by Judge Lloret.[65] We independently studied the record and Judge

Lloret's detailed findings and recommendations. We adopt and approve Judge Lloret's findings and recommendations. We deny Mr. Moore's petition and find no grounds for a certificate of appealability.

Mr. Moore seeks federal habeas relief. Congress limits the power of federal courts to grant habeas relief to a state prisoner. We may review "only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'"[66] We may not grant habeas relief unless the petitioner exhausted remedies available to him in state court.[67]

Congress limits our award of habeas relief: we "shall not" grant habeas relief on any claim "adjudicated on the merits in State court … unless the adjudication of the claim— (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[68]

A state court decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent or involves facts "that are materially indistinguishable" from those in a Supreme Court decision but reaches a different result.[69] A state court decision is an "unreasonable application of" clearly established federal law if there is no possibility "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.[70]

A state court's decision is based on "an unreasonable determination of the facts" only if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding."[71] We must presume the state court's factual findings are correct.[72]

The petitioner bears the burden of rebutting the presumption by clear and convincing evidence.[73] We must defer to the state court's rulings for claims adjudicated on the merits unless they meet the standard in section 2254(d)(1) (contrary to or an unreasonable application of clearly established Federal law) or (d)(2) (an unreasonable determination of the facts in light of the evidence presented in state court).[74] "If this standard is difficult to meet, that is because it was meant to be."[75]

We address Mr. Moore's counseled objections to Judge Lloret's recommendation we deny habeas relief on grounds one through five, and ground seven. We address Mr. Moore's objections to Judge Lloret's Report and Recommendation falling in two categories: evidentiary claims (nos. 1 and 2) and ineffective assistance of trial counsel claims (nos. 3, 4, 5, and 7).

**A. We overrule Mr. Moore's objections regarding evidentiary challenges.**

Mr. Moore posits two evidentiary challenges: (1) insufficient evidence as a matter of law to convict Mr. Moore of murder in the first degree; and (2) Judge McDermott in the trial court erroneously overruled an objection to Detective Hammond's testimony she searched for Mr. Moore in police databases thereby informing the jury he had earlier arrests and/or convictions.

Judge Lloret recommended denying habeas relief on the sufficiency of the evidence claim because the Superior Court's decision is neither contrary to nor is an unreasonable application of clearly established Supreme Court precedent and is not a result of an unreasonable determination of the facts. Judge Lloret recommended denying habeas on the self-defense theory because a portion of the claim is procedurally defaulted and the claim is meritless.

Judge Lloret recommended we deny habeas relief with regard to Detective Hammond's testimony because it is not cognizable on habeas review as it is decided entirely under Pennsylvania evidence law rejected by the Pennsylvania Superior Court and, even if cognizable, is meritless.

Mr. Moore objects to Judge Lloret's recommendations. We agree with Judge Lloret and deny Mr. Moore's objections.

### 1. The Commonwealth adduced sufficient evidence on the specific intent element to support a first-degree murder conviction.

Mr. Moore's challenge to the sufficiency of the evidence has two interrelated components: (a) the elements of first-degree murder are not met because the evidence adduced at trial does not support an intentional killing; and (b) the Commonwealth did not disprove self-defense beyond a reasonable doubt making Mr. Moore, at most, guilty of voluntary manslaughter.[76]

When a petitioner seeks habeas relief by challenging the sufficiency of the evidence to support his state court conviction, the clearly established federal law governing an insufficient evidence claim is set by the Supreme Court in *Jackson v. Virginia*.[77] Under *Jackson*, we ask whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[78] The fact finder must "reach a subjective state of *near certitude* of the guilt of the accused" and failure to satisfy the *Jackson* standard violates due process entitling the habeas petitioner to relief "if the state court's adjudication denying the insufficient evidence claim was objectively unreasonable."[79]

### a. The elements evidence adduced at trial supports a first-degree murder conviction.

Under Pennsylvania law, first-degree murder is "an intentional killing," defined as "… willful, deliberate and premeditated killing."[80] To prove first-degree murder, the Commonwealth must establish: "(1) a human being was killed; (2) the accused caused the death; and (3) the accused acted with malice and the specific intent to kill."[81] A jury may infer specific intent to kill based on the defendant's use of a deadly weapon on a vital part of the victim's body.[82]

As a federal habeas court, we cannot re-evaluate evidence. The standard under *Jackson* is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Judge Lloret concluded, and we agree, Mr. Moore seeks to re-evaluate the evidence on habeas review. Judge Lloret concluded, and we agree, we cannot do so because the Pennsylvania Superior Court applied the Pennsylvania equivalent of *Jackson*.[83]

Judge Lloret considered whether the Commonwealth adduced evidence Mr. Moore possessed specific intent to kill. Judge Lloret concluded the record established such intent, citing the Pennsylvania Supreme Court's decision in *Commonwealth v. Bennett*.[84] In *Bennett*, the Pennsylvania Supreme Court held the use of a deadly weapon on a vital part of the victim's body allows an inference of specific intent to kill.[85] Judge Lloret's detailed record review led him to conclude Mr. Brown sustained a fatal shot while his back was turned to Mr. Moore with the bullet entering the top right of Mr. Brown's right shoulder and travelling from right to left, down and slightly back to front ending on the left side of the lower chest after travelling through the right lung, aorta, and heart.[86]

Mr. Moore objects to Judge Lloret's conclusion arguing it "represents a misunderstanding of the law."[87] Mr. Moore concedes the trajectory of the bullet allows an inference of an intent to kill but argues there is no evidence showing he "actually aimed the gun in the direction of a vital part of [Mr. Brown's] body" and the right shoulder is not a "vital part" of a human body. He further argues merely because the bullet happened to travel into vital parts of Mr. Brown's body does not mean he had intent to kill, and the evidence is equally consistent with the inference he returned fire to protect himself. Mr. Moore cites no authority for the proposition the evidence must show he aimed at a vital part of Mr. Brown's body before finding sufficient evidence to support an

inference of specific intent to kill or evidence the right shoulder is not a vital part of the human body.

We reject Mr. Moore's argument in its entirety. Mr. Moore seeks to reargue the evidence already determined by the state courts and rejected on the merits. Judge McDermott in the state trial court reviewed Mr. Moore's appeal challenging the sufficiency of the evidence to support a finding of first-degree murder, specifically an argument the Commonwealth failed to prove he fired on vital body parts of Mr. Brown.[88] Judge McDermott rejected this argument, concluding the Commonwealth adduced at trial three witnesses who identified Mr. Moore as the shooter: Mr. Smith saw Mr. Moore yell at Mr. Brown, open the screen door, and shoot him; Mr. Highsmith and Mr. Johnson saw Mr. Moore come out from the doorway of the house firing his gun; and Mr. Moore shot at Mr. Brown seven times with five shots hitting Mr. Brown in several vital body parts—the right lung, aorta, heart, and femoral artery.[89] Judge McDermott concluded the volume of shots fired at close range and Mr. Moore opening the screen door and continuing to fire after coming out of the doorway demonstrates a specific intent to kill and found the challenge without merit.[90]

The Pennsylvania Superior Court affirmed Judge McDermott, concluding the Commonwealth adduced sufficient evidence to establish beyond a reasonable doubt Mr. Moore acted with specific intent to kill Mr. Brown, and not out of self-defense.[91] The Pennsylvania Superior Court's adjudication of Mr. Moore's sufficiency of the evidence challenge is neither contrary to, nor is an unreasonable application of, the Supreme Court's teachings in *Jackson*. The Superior Court viewed all evidence it the light most favorable to the Commonwealth and concluded the fact finder could have found the Commonwealth proved each element beyond a

reasonable doubt.[92] The standard applied by the Superior Court is consistent with federal law and appropriately applied to Mr. Moore's insufficiency of the evidence claim.

The Superior Court's assessment of Mr. Moore's insufficiency of the evidence claim is not based on an unreasonable determination of the facts in light of the evidence. The Superior Court reviewed the evidence and concluded the three eyewitnesses identified Mr. Moore as the shooter, two testified at trial Mr. Moore came out from the doorway firing his gun without Mr. Brown ever firing, seven shots were fired at Mr. Brown at close range hitting him five times, and Mr. Brown sustained shots in vital body parts.[93] The standard under *Jackson* is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The record contains sufficient evidence of specific intent to kill.

We deny Mr. Moore's habeas petition on this sufficiency of evidence ground.

### b. The Commonwealth adduced sufficient evidence to support the jury's rejection of a justified self-defense theory and Mr. Moore procedurally defaulted on his imperfect self-defense/voluntary manslaughter.

Judge Lloret recommended denying habeas on the voluntary manslaughter argument as procedurally defaulted. He recommends we deny the sufficiency of the evidence on the self-defense theory as meritless. Mr. Moore objects to Judge Lloret's recommendations.

Mr. Moore challenges the evidence to disprove self-defense beyond a reasonable doubt. He argues once he introduced evidence of self-defense at trial, the Commonwealth carried the burden of disproving self-defense beyond a reasonable doubt. He further argues because the Commonwealth did not meet its burden to disprove self-defense, he is, at most, guilty of voluntary manslaughter and the first-degree murder conviction must be vacated.[94]

###### i.    Mr. Moore's imperfect self-defense/voluntary manslaughter claim is procedurally defaulted.

Judge Lloret correctly explained under Pennsylvania law self-defense is a complete defense to homicide if (1) the defendant reasonably believed himself to be in imminent danger of death or serious bodily injury and the use of deadly force is necessary to prevent such harm; (2) the defendant did not provoke the threat resulting in the killing; and (3) the defendant did not violate a duty to retreat.[95] If the defendant introduces evidence of self-defense, the burden is on the Commonwealth to disprove self-defense beyond a reasonable doubt by proving the absence of at least one of the three elements.[96] If the Commonwealth proves the defendant unreasonably believed the use of deadly force was necessary, but does not disprove the defendant genuinely believed himself to be in imminent danger requiring deadly force and does not disprove either of the other two elements, the defendant may be found guilty only of voluntary manslaughter under an "imperfect self-defense" theory.[97]

Mr. Moore challenged the sufficiency of the evidence to sustain a conviction for first-degree murder in his direct appeal arguing the Commonwealth failed to prove beyond a reasonable doubt he "did not act with justified self-defense especially because … he was located in a house that [Mr. Brown] approached and a resident of this house … had been shot at recently prior to the circumstances underlying the present case."[98] The Superior Court addressed Mr. Moore's appellate brief containing a "passing remark" he "objectively feared for his life and even if his response was excessive, he is at most guilty of voluntary manslaughter."[99] The Superior Court reviewed the record and concluded Mr. Moore did not argue voluntary manslaughter to the trial court, did not request a jury charge on the issue, and did not raise the claim of imperfect self-defense in his Rule 1925(b) statement.[100] The Superior Court concluded Mr. Moore waived the imperfect self–defense aspect of his appeal.[101]

15

Because the Pennsylvania Superior Court rejected the voluntary manslaughter argument as waived, Judge Lloret properly concluded the Superior Court's decision rests on a state law ground independent of the federal question and adequate to support judgment. Judge Lloret then found this claim is waived under Pennsylvania procedural rules and is procedurally defaulted on habeas review.[102]

Mr. Moore objects to Judge Lloret's recommendation we deny the voluntary manslaughter issue as procedurally defaulted. His counsel raises in objections ineffectiveness of Post-Conviction Relief Act counsel for abandoning the voluntary manslaughter claim which we should excuse under *Martinez v. Ryan*.[103] Counsel argues we should grant Mr. Moore a hearing on the issue of whether trial counsel provided ineffective assistance of counsel.[104] In *Martinez*, the Supreme Court recognized "a narrow exception" to procedural default."[105] Under the equitable rule of *Martinez*, "when a prisoner's state post-conviction lawyer was negligent for failing to raise an ineffective-assistance claim that has some merit, we may hear the claim, even though the prisoner never raised it in state court."[106] We may only apply *Martinez's* exception if Mr. Moore can show (1) his procedurally defaulted claim has "some merit"; and (2) his state post-conviction counsel is ineffective under the standards of *Strickland v. Washington*.[107]

Mr. Moore's basis for habeas relief is a challenge to the sufficiency of the evidence to disprove an imperfect self-defense/voluntary manslaughter theory, ***not*** an ineffective assistance of Post-Conviction Relief Act counsel. Mr. Moore never raised an ineffective assistance of counsel claim on this issue—either trial counsel or Post Conviction Relief Act counsel—in his habeas petition.[108]

The Supreme Court, through Rule 2(c)(1) and (2) of the Rules Governing Section 2254 cases, requires the habeas petitioner to "specify all the grounds for relief available to the petitioner"

and "state the facts supporting each ground."[109] Mr. Moore did not raise an ineffective assistance claim regarding the voluntary manslaughter issue in his habeas petition. He did not put Judge Lloret on notice of such a claim. Our Court's Local Civil Rule 72.1(IV)(c) requires "[a]ll issues and evidence shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge."[110]

Mr. Moore cannot raise grounds for habeas relief for the first time in objections to Judge Lloret's Report and Recommendation. Mr. Moore raised a sufficiency of the evidence to disprove a self-defense theory requiring a lesser conviction. The Pennsylvania Superior Court held Mr. Moore waived this sufficiency claim under Pennsylvania procedure. Judge Lloret concluded the claim is procedurally defaulted. So now Mr. Moore raised for the first time in objections to Judge Lloret's Report and Recommendation an ineffective assistance of Post-Conviction Relief Act counsel claim with regard to the imperfect self-defense and voluntary manslaughter issue. He did not raise this claim in three habeas petitions—two pro se and one counseled—and did not raise the issue with Judge Lloret. He does not explain why an ineffective assistance of Post-Conviction Relief Act counsel for failing to raise the alleged error by trial counsel could not have been made in his habeas petition or presented to Judge Lloret. The interest of justice does not require consideration of this new claim.[111]

We adopt Judge Lloret's recommendation we deny the voluntary manslaughter portion of Mr. Moore's argument as procedural defaulted.

### ii.      The sufficiency of the evidence to disprove self-defense.

Mr. Moore objects to Judge Lloret's conclusion there is sufficient evidence in the record for the jury to reject a self-defense theory. Mr. Moore argues the evidence showed Mr. Brown had

a gun, Messrs. Johnson and Highsmith were armed, police found a 9mm casing inside the house and a bullet strike on the outside of the house, police recovered Mr. Brown's 9mm handgun beside his body, Mr. Brown did not sustain injuries to the vital parts of his body, and Mr. Brown and his friends went to the house armed to buy drugs with insufficient money to do so.[112] Mr. Moore also objects to Judge Lloret's conclusion he violated the duty to retreat, an element of justified self-defense. Mr. Moore argues when confronted with an armed assailant who intended to rob him, retreating is not a practical and the only "practical behavior is to shoot first before being shot oneself."[113]

The Supreme Court set our standard of review for challenges to the sufficiency of the evidence in *Jackson*: whether, after reviewing the evidence in the light most favorable to the prosecution, any rational factfinder could have found the essential elements beyond a reasonable doubt.[114] Sufficiency of the evidence claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."[115] "First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"[116]

Judge McDermott in the trial court determined the Commonwealth presented sufficient evidence Mr. Moore did not reasonably believe himself to be in imminent danger of death or great bodily harm.[117] Judge McDermott reviewed the record and found it showed: after yelling at Mr. Brown, Mr. Moore opened the screen door to shoot Mr. Brown, Mr. Moore continued to shoot

after coming out from the doorway, and there is no evidence Mr. Moore feared for his own safety or evidence of a struggle between him and Mr. Brown.[118] Judge McDermott recognized Mr. Moore argued he acted in self-defense because Mr. Brown approached the house and another resident of the house had recently been shot at the house, but concluded it is within the jury's purview as fact finder to reject Mr. Moore's argument, credit the Commonwealth's theory of the case, and believe all, part, or none of the evidence.[119] The Pennsylvania Superior Court reviewed the record and concluded the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt Mr. Moore acted with a specific intent to kill and not out of self-defense.[120]

Judge Lloret, applying the Supreme Court's *Jackson* standard, reviewed the record and concluded the Commonwealth established self-defense did not motivate Mr. Moore's conduct and there is no evidence in the record to indicate he believed himself to be in imminent danger. Judge Lloret cited the record supporting the Commonwealth's position to refute Mr. Moore's self-defense theory including evidence showing no evidence of a struggle, Mr. Moore came out from behind a screen door, witnesses heard Mr. Moore yelling at Mr. Brown, Mr. Moore violated the duty to retreat, and a fatal bullet hit Mr. Brown from the back evidence Mr. Brown turned away from Mr. Moore.[121]

Mr. Moore offers no basis to suggest the Superior Court's decision is "objectively unreasonable" to allow habeas relief. We adopt Judge Lloret's recommendation we deny habeas review on the sufficiency of the evidence claim.

2. **Mr. Moore's challenge to Detective Hammond's testimony is not cognizable on habeas review.**

Mr. Moore objects to Judge Lloret's recommendation we deny habeas review on the challenge to Detective Hammond's testimony as not cognizable because it is an issue of Pennsylvania evidentiary law and, even if cognizable, it is meritless. Mr. Moore concedes such a

claim is not cognizable but asserts evidentiary errors warrant habeas relief if he demonstrates the error is so pervasive as to deny his fundamental right to a fair trial. He argues the error "so flagrant and deplorable as to constitute a denial of a fair trial" but does not explain how the error is so flagrant or deplorable.[122]

Our authority to grant habeas relief to "a person in custody pursuant to the judgment of a State court" is limited to where "custody [is] in violation of the Constitution or laws or treaties of the United States."[123] Habeas claims based on alleged errors of state law are not cognizable on federal habeas review.[124] The Pennsylvania Superior Court reviewed Mr. Moore's objection to Detective Hammond's testimony on appeal. The Superior Court first recognized the admission of evidence is within the discretion of the trial court and may only be reversed on a showing the trial court abused its discretion.[125] The Superior Court concluded references to prior police contact do not amount to reversible error under Pennsylvania law.[126] It held the trial court did not abuse its discretion in admitting Detective Hammond's testimony because the testimony did not indicate a search of law enforcement databases and even if the jury inferred Detective Hammond searched a law enforcement database, "a jury could not reasonably conclude [Mr. Moore's] presence in the database was only as a result of a conviction, rather than as, for example, a witness, a victim, or for some other purpose."[127]

We deny Mr. Moore's objection to an alleged error of Pennsylvania state law as not cognizable on federal habeas review.

**B.  Mr. Moore cannot sustain his ineffective assistance of counsel claims.**

Judge Lloret recommended we deny relief on Mr. Moore's four ineffective assistance of trial counsel claims, each of which the Pennsylvania Superior Court addressed, and rejected, on Mr. Moore's Post-Conviction Relief Act appeal: (1) ineffective assistance for failure to present an

alibi defense and to investigate, interview, and call alibi witnesses who would have established Mr. Moore's innocence; (2) ineffective assistance for failing to properly impeach Commonwealth witness Quaron Highsmith who gave eyewitness testimony with prior inconsistent statements; (3) ineffective assistance for failing to request a *Kloiber* instruction on Mr. Highsmith's inconsistent and conflicting testimony and false identification testimony; and (4) ineffective assistance for failing to conduct an independent investigation of the circumstantial evidence and to explore all avenues leading to the unsubstantiated theory of the Commonwealth's case against Mr. Moore.[128] Mr. Moore objects to Judge Lloret's recommendation we deny habeas relief on these four ineffective assistance of trial counsel claims. We studied the record and de novo reviewed the issues raised by Mr. Moore's objections. We agree with Judge Lloret on each claim.

Claims of ineffective assistance of counsel are evaluated under the two-prong test of *Strickland v. Washington*.[129] To prevail, Mr. Moore must show (1) his "counsel's representation fell below an objective standard of reasonableness"; and (2) "the deficient performance prejudiced the defense."[130]

The first prong requires Mr. Moore to show his trial counsel's alleged errors were "so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment."[131] "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."[132] The second prong requires Mr. Moore to show there is a reasonable probability but for his trial counsel's deficient performance, the result of the trial would have been different.[133]

Our review of ineffective assistance of counsel claims is "doubly deferential" under *Strickland* and section 2254(d), affording "both the state court and the defense attorney the benefit

of the doubt."[134] Our review is limited to "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."[135] We may, but are not required, to address the two-prong *Strickland* test "in the same order or even to address both components  if the [petitioner] makes an insufficient showing on one."[136]

### 1. Trial counsel is not ineffective by failing to investigate and call alibi witnesses.

Mr. Moore asserts ineffectiveness of trial counsel for failing to investigate and call witnesses at trial to support an alibi defense. The Pennsylvania Superior Court reviewed this claim on the merits and rejected it.[137] The Superior Court affirmed the Post-Conviction Relief Act court's dismissal of this claim, finding the record supported trial counsel's decision to pursue a self-defense theory of the case instead of an alibi defense as reasonable particularly where the Commonwealth presented three witnesses identifying Mr. Moore as shooting Mr. Brown.[138] The Superior Court rejected Mr. Moore's ineffective assistance of trial counsel claim for failing to call three alibi witnesses because he failed to identify any of these witnesses in his Post-Conviction Relief Act petition or to provide the names to Post Conviction Relief Act counsel and even if Mr. Moore provided these names to the Post Conviction Relief Act counsel, he failed to present an argument on appeal the witnesses were available and willing to testify for the defense or the absence of the testimony so prejudiced him as to deny him a fair trial.[139]

Judge Lloret recommended we deny this claim for failing to establish either prong of the *Strickland* analysis. Judge Lloret explained Mr. Moore did not show how the Pennsylvania Superior Court failed to apply *Strickland*. Judge Lloret reviewed the record and rejected Mr. Moore's argument trial counsel did not discuss calling any witnesses with petitioner. The record shows trial counsel conferred with Mr. Moore and Judge McDermott conducted a colloquy in which Mr. Moore conceded he spoke with his counsel and they agreed not to call witnesses. Judge

Lloret concluded the colloquy demonstrates trial counsel's failure to call witnesses is reasonable and done with Mr. Moore's approval.

Judge Lloret also concluded Mr. Moore made no showing of prejudice. Mr. Moore failed to support a claim of prejudice with more than speculation as to what the witnesses might have testified and instead vaguely claimed the three witnesses would have provided an alibi defense. Judge Lloret concluded Mr. Moore failed to provide an affidavit or information the three witnesses were ready and available to testify and what the witnesses would have testified to. Judge Lloret concluded the Superior Court's decision is not an unreasonable application of Supreme Court precedent.

Mr. Moore objects to Judge Lloret's finding but does not tell us why. There is an undeveloped paragraph which appears to be missing words and complete sentences.[140] Mr. Moore must do more than rehash his arguments for habeas relief; he must identify errors made by Judge Lloret's Report and Recommendation.[141] We agree with Judge Lloret's recommendation and deny habeas relief on this ground.

### 2.  Trial counsel impeached Commonwealth witness Quaron Highsmith.

Mr. Moore next raises trial counsel's ineffectiveness for failing to impeach Commonwealth witness Quaron Highsmith with prior inconsistent statements. Mr. Highsmith, present at the time of the shooting, gave eyewitness testimony at trial identifying Mr. Moore as the shooter. Mr. Moore argues Mr. Highsmith gave inconsistent and conflicting testimony at trial: Mr. Highsmith did not identify Mr. Moore as the shooter on the night of the shooting or during later police interviews; he twice failed to identify Mr. Moore, or anyone, as the shooter; he told police an "unknown person" shot Mr. Brown; when giving a formal statement to the police he said he only

saw the shooter's arm; and only later identified Mr. Moore as the shooter after receiving a plea deal.

The Pennsylvania Superior Court rejected Mr. Moore's ineffective assistance of trial counsel claim based on this ground. The Superior Court affirmed the Post-Conviction Relief Act court's conclusion trial counsel's examination of Mr. Highsmith exposed inconsistencies in his testimony designed to raise a reasonable doubt as to whether Mr. Moore acted in self-defense and the jury's credit to Mr. Highsmith's trial testimony did not render trial counsel ineffective.[142]

Judge Lloret recommended we dismiss this claim. He properly noted the claim is subject to a doubly deferential review. Supreme Court precedent requires us to review trial counsel's performance deferentially.[143] And our review of the state court's application of *Strickland* under section 2254(d) is "highly deferential."[144] Under this "doubly" deferential review, we cannot find trial counsel's strategy ineffective if "there is any reasonable argument that [he] satisfied *Strickland's* deferential standard."[145]

Judge Lloret reviewed the record and concluded (as the Pennsylvania Superior Court found) trial counsel impeached Mr. Highsmith at trial by questioning Mr. Highsmith's motive to give false testimony, questioning his prior inconsistent statements, and directly attacking Mr. Highsmith's credibility. Judge Lloret found no unreasonable application of Supreme Court precedent.[146]

Mr. Moore objects arguing Judge Lloret's Report and Recommendation failed to address "the most important issue"—trial counsel's "admission" Mr. Moore is the shooter thus "taking the sting out of" any cross-examination.[147] Mr. Moore does not tell us where in the record his trial counsel admitted Mr. Moore is the shooter and fails to coherently develop this argument. Mr.

Moore now concedes his trial counsel cross-examined Mr. Highsmith with inconsistent statements and challenged his credibility, but argues the cross-examination "was meaningless."[148]

But this does not show how trial counsel performed deficiently and the deficiency prejudiced the outcome under *Strickland*. And he does not explain how, applying a doubly deferential standard, we should find trial counsel ineffective after the Pennsylvania Superior Court, affirming the Post-Conviction Relief Act court, already reviewed and rejected this argument.

We agree with Judge Lloret's reasoned analysis and dismiss habeas relief on this ground.

### 3. Trial counsel requested a *Kloiber* instruction and the trial court gave a *Kloiber* compliant instruction.

Mr. Moore next argues ineffective assistance of trial counsel for failing to request a *Kloiber* instruction for Mr. Highsmith's testimony. In response to Mr. Moore's habeas petition, the Commonwealth argued the record shows trial counsel requested a *Kloiber* instruction and the trial court rejected the request but gave an instruction consistent with *Kloiber*.[149]

Mr. Moore then advanced a new argument in his reply brief. He concedes trial counsel requested a *Kloiber* instruction.[150] He now asks us—for the first time in his reply to the Commonwealth's response to his habeas petition—to recharacterize his habeas claim as ineffectiveness of ***direct appeal counsel*** for failing to appeal the trial court's denial of the *Kloiber* charge as requested.[151] And because his Post-Conviction Relief Act counsel failed to raise the failure by direct appeal counsel to object to the *Kloiber* charge, we must consider a claim of ineffectiveness of Post-Conviction Relief Act counsel. Mr. Moore asks us to excuse his default under *Martinez*.

Judge Lloret recommended we dismiss this argument on its merits. Judge Lloret noted an argument first raised in a habeas petitioner's reply brief is waived. Judge Lloret nevertheless found the claim is meritless and recommended its dismissal. Judge Lloret explained the application of

*Kloiber* is a question of state law and it is not the province of a federal habeas court to review state court determinations of state law questions, the Pennsylvania Superior Court held trial counsel requested a *Kloiber* instruction, and although the trial court rejected a *Kloiber* charge as requested, it provided an additional instruction consistent with *Kloiber*.[152] So, the Pennsylvania Superior Court already dismissed the merits of the *Kloiber* instruction claim.

Judge Lloret concluded Mr. Moore failed to show justification for failing to preserve his claim and failed to show a fundamental miscarriage of justice occurred required by *Coleman v. Thompson*.[153] To overcome procedural default, Mr. Moore must demonstrate "cause" to excuse the procedural defect and "actual prejudice" or demonstrate failure to consider the federal claim will result in a "fundamental miscarriage of justice."[154]

Judge Lloret then reviewed the record which shows trial counsel requested a *Kloiber* instruction for Mr. Highsmith's testimony, trial counsel renewed his request for a *Kloiber* charge during a charging conference (outside the presence of the jury), and the trial court (although it rejected the charge as requested) gave a *Kloiber* charge based largely on the Pennsylvania Suggested Standard Criminal Jury Instruction on Identification Testimony.[155]

Mr. Moore objects, arguing Judge Lloret failed to consider *Martinez's* exception to procedural default.[156] He asks for a hearing "on the issue of whether counsel **on direct appeal** provided ineffective assistance by neglecting to raise the argument that the trial court erred when it refused to charge the jury pursuant to *Kloiber*."[157]

We deny Mr. Moore's claims relating to the *Kloiber* charge. First, the record shows the trial court gave a *Kloiber* compliant instruction. Second, Judge Lloret did not ignore Mr. Moore's procedural default argument and applied the standard for procedural default in *Coleman*. The Supreme Court in *Martinez* provides a narrow exception to *Coleman's* general rule governing

procedural default by allowing an ineffective assistance of ***trial counsel*** claim in collateral proceedings.[158] The exception created by *Martinez* does not apply to ineffective assistance of appellate counsel claims; "ineffectiveness of post-conviction counsel does not establish cause to excuse the procedural default of an 'ineffective assistance of appellate counsel' claim."[159] Third, even if *Martinez* applied to excuse the procedural default, Mr. Moore does not show (1) his procedurally defaulted ineffectiveness of trial counsel claim has "some merit"; and (2) his post-conviction counsel is "ineffective under the standards of *Strickland v. Washington*."[160]

Mr. Moore failed to show his objection to the *Kloiber* instruction issue has "some merit." To show a claim has some merit, Mr. Moore must "show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[161] As the Pennsylvania Superior Court found based on its review of the record and as Judge Lloret found based on his thorough review of the record, trial counsel requested a *Kloiber* instruction and, while the trial court apparently did not give the charge as requested, gave a *Kloiber* compliant charge. The record shows the trial judge provided a *Kloiber* instruction for "one or more of the witnesses who identified [Mr. Moore] as the person who committed the crimes" and instead of referring to Mr. Highsmith individually broadened the instruction to "one or more of the witnesses."[162] Judge Lloret concluded this is not prejudicial as the instruction applied to all eyewitness testimony, not just Mr. Highsmith. We agree with Judge Lloret.

Mr. Moore must also show his state post-conviction counsel is ineffective under the standards of *Strickland*. He must meet both the performance and prejudice prongs of *Strickland*.[163] His objections to the Report and Recommendation do not address either prong.

We agree with Judge Lloret's sound reasoning and adopt his recommendation.

### 4.  Trial counsel is not ineffective for failing to conduct an "independent investigation."

Mr. Moore argues ineffectiveness of trial counsel for failing to conduct "a more intensive investigation" which would have revealed Mr. Moore's valid alibi defense and should have prompted trial counsel to retain an expert on the unreliability of eyewitness testimony in high stress situations.[164] He again argues trial counsel ignored his wishes and mounted a defense of self-defense rather than the alibi defense Mr. Moore wanted to pursue.

Judge Lloret recommended we dismiss this ineffectiveness claim. Judge Lloret incorporated his reasoning with regard to the independent investigation for an alibi defense. Judge Lloret also conclude the claim is procedurally defaulted and barred from habeas review because Mr. Moore did not argue, or establish, the Pennsylvania Superior Court's decision rejecting this same argument is an improper application of federal law. The Pennsylvania Superior Court found Mr. Moore failed to identify witnesses in his pro se Post Conviction Relief Act petition, failed to provide names to Post Conviction Relief Act counsel, and failed to present an argument on appeal the witnesses were available and willing to testify for the defense or show the absence of the testimony is so prejudicial as to deny him a fair trial.[165] Judge Lloret also noted the record showed the trial court colloquied Mr. Moore on witnesses and he stated on the record he did not have additional witnesses to call demonstrating Mr. Moore agreed to trial counsel's strategy.[166]

Mr. Moore objected to Judge Lloret's Report and Recommendation for the same reasons he objects to the alibi defense issue. We reviewed this issue and, for all the reasons explained, deny Mr. Moore relief on this ground.

We next turn to the claim of ineffective assistance of trial counsel for failing to retain an expert on eyewitness testimony in high stress situations. Judge Lloret concluded this claim is procedurally defaulted because Mr. Moore did not raise this specific issue in state court. The

Pennsylvania Superior Court rejected Mr. Moore's argument trial counsel failed to sufficiently prepare for trial because he did not elaborate on how trial counsel's investigation is inadequate and because he raised new arguments for the first time on appeal.[167] Judge Lloret also rejected Mr. Moore's argument Pennsylvania Rule of Evidence 702 allows for expert witnesses and he should have been given the opportunity to present expert witnesses. Judge Lloret explained this does not plead a cognizable constitutional claim. Judge Lloret also concluded calling an expert witness to refute eyewitness testimony of individuals who personally knew Mr. Moore before the shooting would be of little use, his trial counsel would have known this, and application of *Strickland* does not result in finding unconstitutionally ineffective trial counsel.

Mr. Moore objected to Judge Lloret's recommendation for failing to apply *Commonwealth v. Walker*.[168] The Pennsylvania Supreme Court in *Walker* held the admission of expert testimony regarding eyewitness identification is no longer *per se* impermissible, leaving the admissibility of such expert testimony to the discretion of the trial court. But because such testimony is admissible under Pennsylvania law does not mean trial counsel is ineffective for not investigating the retention of an expert. Mr. Moore simply argues an expert would have "greatly assisted a defense of mistaken identity, had counsel decided to mount one" and counsel's failure to do so amounts to a deprivation of effective assistance.

We reject this claim in its entirety for the reasons thoroughly explained by Judge Lloret. This claim is procedurally defaulted and even if it is not defaulted, Mr. Moore does not meet the performance and prejudice prongs of *Strickland*. He does not show how this alleged error is so serious as to have non-functioning counsel guaranteed by the Sixth Amendment or a reasonable probability but for this alleged deficient performance the result of the trial would have been different.

**C.  We find no basis for an evidentiary hearing.**

Mr. Moore requests we hold an evidentiary hearing on his sufficiency of the evidence ground to consider Post Conviction Relief Act counsel's ineffectiveness for abandoning the voluntary manslaughter defense and a self-defense argument, and a new ineffective assistance of trial counsel claim based on the failure to develop a defense his retreat from the scene "is not a practical solution," and ineffective assistance of counsel claim based on whether direct appeal counsel provided effective assistance by failing to object when the trial court refused a *Kloiber* instruction. We decline to do so.

Our scope of review under section 2254 is limited. The factual record is developed. We may not expand the state court record through an evidentiary hearing where Mr. Moore "failed to develop the factual basis of a claim in State court proceedings" unless Mr. Moore meets the stringent requirements of section 2254(e). Section 2254(e)(2) speaks in mandatory terms: we "shall not hold an evidentiary hearing unless [Mr. Moore] shows that—(A) the claim relies on—(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence" ***and*** "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."[169]

Mr. Moore does not address the requirements of section 2254(e)(2) let alone meet its stringent standards. We deny his request for a hearing.

**D.  There is no basis for a certificate of appealability.**

We find no basis for a certificate of appealability. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final

order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."[170] We may issue a certificate of appealability if "the applicant has made a substantial showing of the denial of a constitutional right."[171] Mr. Moore "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[172]

We decline to issue a certificate of appealability. Reasonable jurists could not disagree with our resolution of Mr. Moore's claims.

## III. Conclusion

We approve and adopt Judge Lloret's detailed Report and Recommendation. We deny Mr. Moore's habeas petition with prejudice, deny an evidentiary hearing, and deny a certificate of appealability.

---

[1] *Commw. v. Moore*, No. CP-51-CR-0003800-2015, 2016 WL 9241572, at *1 (Phila. Cnty. Ct. of Common Pleas June 13, 2016) (citing N.T. 3/01/2016 at 182–87, 210; N.T. 3/02/2036 at 111, 195–96, 203–07). Mr. Moore does not object to the trial court's summary of the underlying facts in this case, adopting the summary wholesale in his counseled habeas petition. *See* ECF No. 22. Judge Lloret adopted the same factual summary in his Report and Recommendation. ECF No. 33. Mr. Moore does not object to Judge Lloret's adoption of the factual summary in his Report and Recommendation. ECF No. 36. With no dispute as to the trial court's factual summary, we too adopt it and repeat it here as well as the facts summarized by the Pennsylvania Superior Court.

[2] *Moore*, 2016 WL 9241572 at *1.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.* (citing N.T. 3/01/2016 at 220–21, 245–48; N.T. 3/02/2016 at 160–64, 206–07, 227–28, 243–47).

[12] *Id.*

[13] *Id.* (citing N.T. 3/01/2016 at 46–53).

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* (citing N.T. 3/01/2016 at 46–53, 154–70).

[19] *Id.* at *2.

[20] *Id.*

[21] *Id.* (citing N.T. 3/01/2016 at 1–14; N.T. 3/03/2016 at 80–81, 87).

[22] *Id.*

[23] *Id.* (citing N.T. 3/01/2016 at 210–19; N.T. 3/02/2016 at 62–63).

[24] *Id.*

[25] *Id.*

[26] *Id.* at *1.

[27] *Id.* at *3–*4.

[28] *Commw. v. Moore*, No. 1123 EDA 2016, 2017 WL 2791133, at *1 (Pa. Super. Ct. June 27, 2017).

[29] *Moore*, 2016 WL 9241572 at *2 (citing N.T. 3/02/2016 at 153, 158–59, 167, 170, 206–07, 227–28, 243–45).

---

[30] *Id.* at *4.

[31] *Id.*

[32] *Commw. v. Moore*, No. 1123 EDA 2016, Pa. Super. Ct. Docket Sheet.

[33] *Commw. v. Moore*, 2017 WL 2791133 at *3.

[34] *Id.*

[35] *Id.*

[36] *Id.* at *4.

[37] *Id.* at * 4. Pennsylvania law requires appellants must preserve their claims for appellate review by filing a Statement of Matters Complained of on Appeal under Pennsylvania Rule of Appellate Procedure 1925. Any issues not raised in a Rule 1925(b) statement are deemed waived. *Commw. v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) (quoting *Commw. v. Lord*, 719 A.2d 306 (Pa. 1998)).

[38] *Commw. v. Moore*, 2017 WL 2791133 at * 4.

[39] *Id.* at *4–*5.

[40] *Id.*

[41] *Id.*

[42] *Id.* at *5.

[43] *Id.*

[44] *Id.*

[45] *Commw. v. Moore*, 174 A.3d 1024 (Pa. 2017) (Table).

[46] 42 Pa. Cons. Stat. § 9541 *et seq.*

[47] ECF No. 1, Habeas Petition at 18, Appx. B; *Commw. v. Moore*, 237 A.3d 469 (Pa. Super. Ct. May 21, 2020) (Table).

[48] *Moore*, 237 A.3d 469 at *2.

[49] *Id.*; *see also* Order and Opinion of Post-Conviction Relief Act court, *Commw. v. Moore*, CP-51-cr-0003800-2015 at 2, n. 3 (Nov. 29, 2018) (McDermott, J.).

[50] 550 A.2d 213 (Pa. Super. Ct. 1988). Under Pennsylvania law, a "no-merit" letter is "a mechanism by which appointed Post Conviction Relief Act counsel may seek to withdraw from representing a petitioner, on the basis that the petition is meritless. The letter is sent to the petitioner and must detail the nature and extent of the lawyer's review of the case, list each issue the petitioner wishes to have reviewed, and contain an explanation of why the lawyer believes that the petitioner's issues are meritless. The Post-Conviction Relief Act court must then 'conduct[ ] its *own independent review of the record*' and determine whether it agrees that the petition is meritless. (emphasis added). If so, counsel is permitted to withdraw, and the petitioner is allowed to proceed pro se or with the aid of private counsel." *Velazquez v. Superintendent Fayette SCI*, 937 F.3d 151, 156, n. 1 (3d Cir. 2019) (quoting *Commw. v. Finley*, 550 A.2d at 215).

[51] Pennsylvania's Rule of Criminal Procedure 907(1) requires a judge "shall promptly review the [Post Conviction Relief Act] petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue."

[52] *Commw. v. Moore*, CP-51-0003800-2015, Order and Opinion, Nov. 29, 2018.

[53] *Moore*, 237 A.3d 469. The state court records shows Mr. Moore pro se filed a second "Motion for Post-Conviction Collateral Relief" on February 21, 2019. In this second Post Conviction Relief Act petition, Mr. Moore argued ineffectiveness of trial counsel for failing to hire an expert witness to testify on the "unreliability of eyewitness testimony" and for failing to suppress witness testimony "due to the unreliability and the inconsistencies that were within the testimony i[t]self." Mr. Moore also raised ineffectiveness of Post-Conviction Relief Act counsel despite the withdrawal of Post-Conviction Relief Act counsel and proceeding pro se. He claims ineffectiveness of Post-Conviction Relief Act counsel for failing to raise trial counsel's ineffectiveness in failing to hire an expert witness to support a defense of actual innocence. There is nothing in the state court record indicating the disposition of Mr. Moore's second Post Conviction Relief Act petition. We note it here for completeness.

[54] ECF Doc. No. 1. Mr. Moore pro se filed an amended habeas petition. ECF No. 16. Mr. Moore then retained attorney Teri B. Himebaugh who sought leave to amend the habeas petition. ECF No. 18. Judge Perkin granted the petition. ECF No. 19. Attorney Himebaugh filed a third amended habeas petition on September 28, 2021. ECF No. 22.

[55] ECF No. 22.

[56] ECF No. 30. The United States responded to the third amended habeas petition to which Mr. Moore replied. ECF Nos. 29, 32.

[57] ECF No. 33 at 8–13.

---

[58] *Id.* at 13.

[59] *Id.* at 15-18.

[60] *Id.* at 18-30.

[61] ECF No. 33.

[62] ECF No. 36.

[63] *Id.* at 9.

[64] *Id.*

[65] 28 U.S.C. § 636(b)(1)(B).

[66] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting 28 U.S.C. § 2254(a)).

[67] 28 U.S.C. § 2254(b)(1)(A).

[68] 28 U.S.C. § 2254(d).

[69] *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

[70] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[71] *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (cleaned up).

[72] 28 U.S.C. § 2254(e)(1).

[73] *Eley*, 712 F.3d at 846 (cleaned up).

[74] *Rogers v. Superintendent Greene SCI*, 80 F.4th 458, 462 (3d Cir. 2023).

[75] *Harrington*, 562 U.S. at 102.

[76] ECF No. 22 at 7–11.

[77] 443 U.S. 307 (1979).

[78] *Travillion v. Superintendent Rockview SCI*, 982 F.3d 896, 902 (3d Cir. 2020) (quoting *Jackson*, 443 U.S. at 319) (emphasis in original).

[79] *Id.* (cleaned up) (emphasis in original).

[80] 18 Pa. Cons. Stat. § 2502.

[81] *Commw. v. Le*, 208 A.3d 960, 969 (Pa. 2019).

[82] *Id.*

[83] *Moore*, 2017 WL 2791133 at *3. The Pennsylvania Superior Court applied *Comm. v. McFadden*, 156 A.3d 299, 303 (Pa. Super. Ct. 2017) holding: "A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict." *McFadden*, 156 A.3d at 303. *See also*, ECF No. 33, Report and Recommendation at 10.

[84] 57 A.3d 1185 (Pa. 2012).

[85] *Id.* at 1202.

[86] ECF No. 33 at 12.

[87] ECF No. 36 at 2.

[88] *Moore*, 2016 WL 9241572 at *3.

[89] *Id.*

[90] *Id.*

[91] *Moore*, 2017 WL 2791133 at *4.

[92] *Id.* at *3–*4.

[93] *Id.*

[94] ECF No. 22 at 9.

[95] *Commw. v. Jones*, 271 A.3d 452, 458 (Pa. Super. Ct. 2021), *appeal denied*, 282 A.3d 1122 (Pa. 2022), *cert. denied*, 143 S.Ct. 469 (2022) (citing 18 Pa. Cons. Stat. § 505(b)(2)).

[96] *Id.*

[97] *Id.* (citing 18 Pa. Cons. Stat. § 2503(b)).

[98] *Commw. v. Moore*, No. CP-51-CR-0003800-2015, Statement of Matters Complaint on of Appeal Pursuant to Pa.R.App. P. 1925.

[99] *Moore*, 2017 WL 2791133 at *4.

---

[100] *Id.*

[101] *Id.*

[102] ECF No. 33. *See Beard v. Kindler*, 558 U.S. 53, 55 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 728 (1991)).

[103] 566 U.S. 1 (2012).

[104] ECF No. 36 at 4.

[105] *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019) (quoting *Martinez*, 566 U.S. at 9).

[106] *Williams v. Superintendent Mahanoy SCI*, 45 F.4th 713, 720 (3d Cir. 2022) (citing *Workman*, 915 F.3d at 937) (cleaned up).

[107] *Workman*, 915 F.3d at 937.

[108] *See* ECF Nos. 1, 16, 22.

[109] Rules Governing § 2254 Cases, Rule 2.

[110] *Suero v. Kauffman*, No. 19-1653, 2022 WL 991899, at *9 (E.D. Pa. Apr. 1, 2022) (citation omitted).

[111] *Grant v. Tice*, No. 17-3471, 2019 WL 2016260, at *3 (E.D. Pa. May 6, 2019).

[112] ECF No. 36 at 4–5.

[113] *Id.* at 5. Mr. Moore also argues trial counsel did not present this defense and we must grant a hearing to determine whether trial counsel's failure constitutes ineffective assistance. For the reasons already explained, Mr. Moore did not raise this claim in his habeas petition or before Judge Lloret. We reject it.

[114] *Jackson*, 443 U.S. at 319.

[115] *Coleman,* 566 U.S. at 651.

[116] *Id.* (cleaned up).

[117] *Moore*, 2016 WL 9241572 at *3–*4.

[118] *Id.* at *4.

[119] *Id.*

[120] *Moore*, 2017 WL 2791133 at *4.

[121] ECF No. 33 at 15.

[122] ECF No. 36 at 6.

[123] 28 U.S.C. § 2254(a).

[124] *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

[125] *Moore*, 2017 WL 2791133 at *5.

[126] *Id.*

[127] *Id.* at *6.

[128] ECF No. 22.

[129] 466 U.S. 668 (1984).

[130] *Garza v. Idaho*, 586 U.S. ---, 139 S. Ct. 738, 744 (2019) (quoting *Strickland*, 466 U.S. at 687–88).

[131] *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 391 (3d Cir. 2020) (quoting *Strickland*, 466 U.S. at 687).

[132] *Id.* (quoting *Harrington*, 562 U.S. at 105).

[133] *Strickland*, 466  U.S. at 694.

[134] *Woods v. Donald*, 575 U.S. 312, 316–17 (2015) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

[135] *Harrington*, 562 U.S. at 105.

[136] *Strickland*, 466 U.S. at 697.

[137] *Moore*, 237 A.3d 469 at *3-*4.

[138] *Id.* at *4.

[139] *Id.*

[140] ECF No. 36 at 6, § III.

[141] *Cairns v. McGinley*, No. 19-5351, 2023 WL 5432498 at *10 (E.D. Pa. Aug. 23, 2023) (collecting cases).

[142] *Moore*, 237 A.3d 469 at *4.

[143] *Harrington*, 562 U.S. at 105.

[144] *Id.*

[145] *Id.*

[146] ECF No. 33 at 24 (citing N.T. March 2, 2016 at 173:21–175:18; 175:19–176:19; 179:1–181:10; 189:22–190:9; 193:16–22; 193:23–194:2; 194:3–197:19; 263:2.

[147] ECF No. 36 at 6-7.

[148] *Id.* at 7. The Pennsylvania Supreme Court in *Commonwealth v. Kloiber* held a jury must be given a cautionary instruction "where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions." In such instances, "the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution." 106 A. 2d 820, 826–27 (Pa. 1954).

[149] ECF No. 29 at 13–14.

[150] ECF No. 32 at 4.

[151] *Id.*

[152] *Moore*, 237 A.3d 469 at *4–*5.

[153] 501 U.S. 722 (1991).

[154] *Id.* at 749–50; *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022).

[155] ECF No. 33 at 27, n. 6 (citing N.T. March 3, 2016 at 217:4–220:7)

[156] ECF No. 36 at 7–8.

[157] *Id.* at 8.

[158] *Davila v. Davis*, 582 U.S. 521, 529–30 (2017); *Workman*, 915 F.3d at 935, n. 11 (procedural default of ineffective assistance of direct appeal counsel is not eligible to be excused under *Martinez*).

[159] *Jackson v. Superintendent Somerset SCI*, 713 F. App'x 68, 73 (3d Cir. 2017) (quoting *Davila*, 582 U.S. at 529).

[160] *Workman*, 915 F.3d 937 (quoting *Martinez*, 566 U.S. at 14).

[161] *Id.* at 938 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

[162] ECF No. 33 at 27, n. 6 (citing N.T. March 3, 2016 at 217:4–220:7).

[163] *Workman*, 915 F.3d at 938.

[164] ECF No. 22 at 34.

[165] *Moore*, 237 A.3d 469 at *3.

[166] ECF No. 33 at 21–22 (citing N.T. March 3, 2016 at 113:2–15).

[167] *Moore*, 237 A.3d 469 at *5.

[168] 92 A.3d 766 (Pa. 2014).

[169] 28 U.S.C. § 2254(e)(2); *Shinn*, 596 U.S. at 388. The requirements of section 2254(e)(2) also apply in the context of a *Martinez* hearing. *Shinn*, 596 U.S. at 388.

[170] 28 U.S.C. § 2253(c)(1)(A).

[171] 28 U.S.C. § 2253(c)(2).

[172] *Miller-El*, 537 U.S. at 323 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).